# Tobias *v.* Josiah Morris & Co.

126 535
s132 267

## *Action of Assumpsit.*

1. *Sufficiency of judgment on demurrer; minute entry.*—To constitute a sufficient judgment on demurrer, there should be a formal entry of the submission on demurrers to specified pleadings, the recital of the consideration thereof by the court, and a formal adjudication, such as "it is therefore considered and adjudged by the court that the demurrers * * * be and they are hereby" overruled or sustained, as the case may be; and the mere recital in the judgment entry that demurrers to specified pleadings "were sustained" and "were overruled" is insufficient as a judgment of the court upon such demurrers, and such rulings so presented on appeal will not be reviewed.

2. *Deposit in banks; demand necessary to maintain action for the recovery of a general deposit.*—Under the rule established by the custom and usages of the banking business, where a general deposit is made with a bank, there is an implied contract on the part of the bank to pay upon demand of the depositor, and therefore no action against the bank by such depositor for the recovery of his deposit can be maintained, without a previous demand by check or otherwise for such repayment; and the bringing of a suit does not constitute a demand in such case.

3. *Same; same; cannot be recovered under common counts.*—A demand being a condition precedent to the maintenance of a suit against a bank by the depositor to recover his general deposit therein, no recovery of such deposit can be had upon the common counts, which contain no averment that the plaintiff has made any demand of the defendant for payment, or excuse for failure to make such demand.

4. *Right of action on contract; performance of condition precedent must be averred.*—When by the express or implied terms of a contract which is the foundation of a suit, it is incumbent on the plaintiff before the commencement of his action, to request defendant to perform his part of the contract, such request is a condition precedent to the maintenance of the suit on said contract and must be averred in the complaint, or there must be some allegation sufficient to dispense with such averment.

5. *Right of action; recovery not defeated by insufficiency of complaint.*—Where a special count in a complaint, though insufficient in some of its averments, states a cause of action, and its sufficiency is not tested by demurrer, but issue is joined on pleas filed thereto, upon proof of the cause of ac-

[Tobias v. Josiah Morris & Co.]

tion as averred, the plaintiff is entitled to recover, and his right of recovery cannot be defeated by reason of the insufficiency in the averments of the complaint.

6. *Estoppel; when created.*—If a person by an expression or by negligent silence, or by a course of conduct, so conducts himself that another may reasonably infer the existence of an agreement or license, and acts upon such inference, whether the former intends that he should so act or not; the party using such language or who so conducts himself is estopped from denying the reasonable inference to be drawn from his words or conduct.

7. *Same; when question for the jury; action against bank to recover general deposit.*—In an action by a depositor, who is a married woman, against a bank to recover a general deposit, where the defense is that the deposit was made by the plaintiff's husband in her name, and in her presence the husband instructed the defendants that the money was to be drawn out by checks signed with plaintiff's name by her husband, and that all the money deposited by plaintiff had been drawn out by checks signed in accordance with such instructions, if there is a conflict in the evidence as to whether plaintiff had such instructions, or authorized or acquiesced therein, the question of whether her actions and conduct on the occasion of making the deposit and opening the account with the defendants estopped plaintiff to deny her husband's right and authority to draw out the money so deposited, by check signed in her name by him is a question of fact, which should be submitted to the determination of the jury.

8. *Same; same; same; case at bar.*—In an action by a depositor, who is a married woman, against a bank to recover a general deposit, where the defense was that the bank had paid out all of the deposit on check presented and drawn thereon, the evidence for the plaintiff tended to show that at the time she opened her account with the defendants she and her husband went to the defendants' bank together, and she deposited with it to her credit New York Exchange drawn in her favor, and indorsed by her, and that the account was opened in her name, and that no instructions were given at that time as to how the money so deposited was to be drawn, nor was anything else said or done in the transaction. The defendant's testimony tended to show that the deposit was made by the plaintiff's husband in her name, and the receiving teller was told by the husband in the plaintiff's presence, that the deposits made in the name of the wife were to be drawn out on checks signed in her name, by the husband, and the husband them wrote in the book kept by the bank for the purpose, the signature to be attached to checks drawn on the deposit as made. The plaintiff denied that she heard any of such conversation, or that she saw her husband give the signa-

[Tobias v. Josiah Morris & Co.]

ture to the teller of defendants. The money deposited by the plaintiff was all paid out by defendants on checks drawn by plaintiff's husband, to which were attached the signature as written in the record of signatures kept by defendants. *Held*: the question as to whether by her acts and conduct at the time of opening the account and making the deposit with the defendants, the plaintiff was estopped to deny her husband's right to draw out the money deposited upon drafts signed by him in her name, and to claim and recover the same of defendants, is a question of fact for the determination of the jury; and, therefore, it was error for the court, at the request of the defendants, to give the general affirmative charge in their behalf.

9. *Course of dealing between bank and depositor; in the absence of notice, subsequent transaction governed thereby.*—Where there is a regular course of dealing established between a bank and one of its customers, there is presumed an obligation that the dealing so continues, and if nothing is provided to the contrary, and in the absence of direction or notification as to its discontinuance, such a course of dealing will govern subsequent transactions of the same nature between said parties.

APPEAL from Circuit Court of Montgomery.

Heard before the Hon. J. C. RICHARDSON.

This action was brought by the appellant, Mrs. Birdy Tobias, against the appellees, Josiah Morris & Co., for the recovery of certain moneys deposited by the plaintiff at various times to her credit, with the banking house of the defendants. The complaint contained nine counts. The first count sought to recover $800 as money had and received by the defendant on Sept. 16, 1895. The second count was for $300 for money had and received on or about the 8th day of November, 1895. The third count was for $300 for money had and received on Dec. 23, 1895, and the fourth count was for $678.30, as money had and received on Dec. 30, 1895. The fifth, sixth, seventh and eighth counts sought to recover the said several sums of money, and were the common counts on an account stated and for money loaned. The ninth was a special count which is copied in the opinion. The defendant filed several special pleas, numbered 7, 8, 9 and 10, in which they set up as a defense that on Sept. 16, 1895, an account was opened with them by B. Tobias; that on that date a bill of exchange on New York was presented to them by B. Tobias and her husband, M. S. Tobias; that the said draft was cashed and deposited with them in the name of B,

Tobias; that at such time M. S. Tobias, with whom the transaction was had, notified the defendants that the money deposited at that time and to be subsequently deposited by them would be drawn out by checks in the name of B. Tobias, by M. S. Tobias, and that accordingly all of the money had been drawn out by checks so drawn. These several pleas set out in detail the facts incident to the defense interposed, which the evidence of defendants tended to sustain. To each of these pleas the plaintiff filed several separate demurrers. After the overruling of these demurerrs to all of the pleas, except plea No. 7, the plaintiff filed several replications to pleas number 8, 9 and 10. The defendants demurred to these replications, which demurrers, it is recited, were sustained. It is unnecessary to set out the grounds of the demurrers to the pleas or to replications, inasmuch as the judgment entry does not present such a ruling thereon as will be reviewed by this court. The cause was tried upon issue joined upon pleas of the general issue and the payment, respectively. The ruling of the court upon the pleadings as contained in the judgment entry is as follows:

"Plaintiff thereupon interposed her demurrers to said pleas seven, eight and nine, which demurrers, being argued by counsel and understood by the court, were sustained as to plea number seven and overruled as to pleas numbered eight and nine. Thereupon plaintiff filed her replications numbered 1, 2, 3, 4, and 5 to the said pleas numbered eight and nine, to which replications defendant interposed their demurrers, which said demurrers, the court, upon consideration, sustained. Leave of the court having been first obtained, defendants filed plea number 10, to which plaintiff interposed her demurrer, which was filed on the 10th day of June, 1899, which demurrer, upon consideration of the court, was overruled, thereupon plaintiff filed replications numbered five and a half, six and seven, to plea numbered ten, to which said replications defendants demurred, which said demurrer, upon consideration by the court, was sustained."

The evidence on the part of the plaintiff tended to establish the following facts: About the 16th of September, 1895, the plaintiff received a certain bill of exchange for $800, payable to her, drawn by the cashier of the

First National Bank of Rockdale, Texas, on the Chase National Bank of New York city. Being desirous of depositing the same in some bank, plaintiff went, in company with her husband, carrying with her said exchange, to one Capt. W. B. Jones, for the purpose of conferring with him with reference to placing the same in some bank for collection and deposit. At the suggestion of Capt. Jones that she go to the defendants' bank, she thereupon handed said exchange to Capt. Jones, with the request that he deposit it for her to her credit in said bank, to which Capt. Jones replied he would do so; thereupon, she, in company with Capt. Jones and her husband, proceeded across the street to the banking house of Josiah Morris & Co.; Capt. Jones taking the exchange with him. When they reached the bank Capt. Jones presented it. to the receiving teller, and asked him to place it to the credit of Mrs. B. Tobias; the receiving teller, after looking at the check, said that he would do so, but that she would have to endorse it; thereupon Capt. Jones handed her the exchange, and she took it and endorsed it there in the bank, and handed it back to Capt. Jones, who then handed it to the receiving teller. The husband of the plaintiff never had said exchange in his possession at all. Plaintiff heard nothing else said there in the bank except what has been stated; nor did she see her husband sign a book of any sort while she was in the bank, nor was anything said in said bank in her presence by any one to the effect that her husband, Marion Tobias, would draw out this money by checks signed in her name; the check or draft belonged to her, and was in part payment of some land which she got from her father's estate. Plaintiff did not know anything of her own personal knowledge, with reference to the deposit of $300 on the 8th of November, 1895, nor the $300 on the 23d day of December, 1895, but she said that her husband, Marion Tobias, had no money of his own, was engaged in no business, but that he had had money of hers in his possession, the proceeds of land belonging to her, over and above the amount of said exchange.

About the middle of December, 1895, plaintiff received a check, dated December 11, 1895, drawn by I. A. Worley, and payable to her, on the First National Bank of Rockdale, Texas, for $680; the check did not

[Tobias v. Josiah Morris & Co.]

come direct to her, but was sent by Mr. Worley to the defendants' bank, with a paper to be signed by her releasing a vendors' lien and upon the signature of which the check was to be delivered to her. The release was signed by her, and the check delivered to her by the defendants' bank, and she thereupon endorsed it there, and handed it to one of the representatives of the defendants' bank, who said that the bank was not willing to pay the check right then, as they knew nothing of the Texas bank, and would have to make inquiry before paying the money; that they would send the check for collection, and when they heard from it they would place the proceeds to the credit of her account; she assented to this, and the check was forwarded by the defendants' bank for collection; both this exchange and the check were collected by the defendants' bank, and all of said deposits were made to the plaintiff's credit with said bank; she had demanded the money of the bank, but payment was refused; she did not know that the money had been paid out by the bank until the 7th of January, 1896; had never authorized any one to sign her name to checks, nor to in any manner receive said money; when she heard the money was gone she immediately took steps looking to its recovery. She and her husband were not living together at the time, and had not lived together since January 2, 1896, and she knew nothing of the money having been drawn out until after he had left her.

The testimony on the part of the defendants tended to show that at the time of the delivery to the defendants' bank of the exchange for $800, M. S. Tobias, the husband of the plaintiff, said that he wanted to open an account in the name of B. Tobias,—that B. Tobias was his wife; that either M. S. Tobias or Capt. Jones handed to the bank's receiving teller a check payable to the order of B. Tobias, and that thereupon the receiving teller took a record of the signature "B. Tobias," signed by M. S. Tobias; that the money was placed to the credit of Mrs. B. Tobias; that M. S. Tobias stated that he would check out the money in the name of B. Tobias. J. R. Sayre, a witness for the defense, testified that on September 16, 1895, he was employed by the banking house of Josiah Morris & Co., occupying the position of receiving teller, and that the account of said Josiah Morris & Co. with B. Tobias was opened on that date;

[Tobias v. Josiah Morris & Co.]

the negotiations incident to the opening of such account being had with him as the representative of the defendants. He testified that at the time the deposit was made and the account was opened, Capt. W. B. Jones and M. S. Tobias were present, and that M. S. Tobias stated to him that he wanted to open an account in the name of B. Tobias, who was his wife, and that thereupon said M. S. Tobias handed witness a check payable to the order of B. Tobias; that thereupon the witness took a record of signatures, and requested M. S. Tobias to write therein the signature by which the money was to be drawn out; that thereupon he wrote B. Tobias, stating that the money was to be checked out by him, M. S. Tobias, in the name of B. Tobias. This witness further testified that he did not see the plaintiff at the time of this transaction, and he did not know that the plaintiff was present, or whether she heard any part of the conversation or not. He further testified that all of the money which was deposited was credited to the account of B. Tobias, and was paid out on checks signed "B. Tobias, by M. S. Tobias." The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion. There were 23 charges requested by the plaintiff and refused by the court, to the refusal to give each of which the plaintiff separately excepted. It is, however, unnecessary to set out these charges in detail.

At the request of the defendants, the court gave to the jury the following written charge:

"If the jury believe all the evidence, they must find a verdict for the defendants."

To the giving of this charge the plaintiff duly excepted. There were verdict and judgment in favor of the defendants. The plaintiff appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

LOMAX, CRUM & WEIL and GORDON MACDONALD, for appellants.—1. The authorities are numerous and harmonious on the point that a bank receiving money on deposit is estopped from denying the title of the depositor. Aside from the fact that the plaintiff cannot be deprived of her money, without the knowledge on her part of the facts asserted by the bank, as to the occurrences that took place at the time of the first deposit, by the plainest principles of law, when the bank received

the money with instructions to deposit it to the account of the plaintiff, and, at that time, or immediately afterwards, was informed by the husband of the plaintiff that he would draw it out by checks signed by him in her name, it was put on notice of a peculiar and unusual transaction. It became its duty to inquire and inform itself as to the authority of the husband to draw out this money.—*Bates v. First Nat. Bank,* 89 N. Y. 286; *Hoenig v. Pacific Bank,* 73 Cal. 464; *Kerr v. People's Bank,* 27 Atl. Rep. 963.

2. In this case the complaint contains the common counts, as well as a special count on a contract of deposit made by the plaintiff with the bank. No demurrer was interposed to the complaint, or any portion thereof. Although there may be a special contract, if by the breach of it plaintiff becomes entitled to recover a sum *in numero,* or which may by mere calculation be rendered certain, a recovery may be had on the common counts.—*Holloway v. Talbot,* 70 Ala. 389; *Sprague v. Morgan,* 7 Ala. 952; *Snedicor v. Leechman,* 10 Ala. 330. Suit will lie in favor of the depositor on the common counts. This has been conclusively settled by the sound and well-considered decision of the House of Lords in the case of *Foley v. Hill.*—2 H. L. Cas. 28; 1 Morse on Banking, § 289 (botton p. 500.) "A complaint which averred that the amount sued for is due upon an account, is sufficient to support a judgment after verdict." *Bradfield v. Patterson,* 106 Ala. 397.

3. The fact of whether or not a demand was made was not necessary to be averred either in the common counts or the special count. At any rate, failure to so allege it would only be subject to demurrer. No demurrer was interposed to the complaint on this ground; and it certainly stated a substantial cause of action. The ninth count alleged that plaintiff deposited money with the defendant, and certain checks which were collected, the whole aggregating a certain sum, to the credit of her account with defendant, and which, on demand made, they refused to pay her. The bank is estopped from denying that the money was hers when it had been passed to her credit.—40 Am. Rep. 632; 17 Am. St. Rep. 782; *Griel v. Pollak,* 16 So. Rep. 702; 105 Ala. 249.

4. As to whether an action for money had and received will lie on the facts revealed in this record, see *Potts v. First National Bank,* 102 Ala. 286; 14 So. 663;

*Stewart v. Conner,* 9 Ala. 804.

5. It is not denied by appellant that, under ordinary circumstances, a demand, either by check or *otherwise,* is a condition precedent to the maintenance of a suit to recover money deposited; but no principle of law seems to be better settled than that a demand is waived or becomes unnecessary when it would be futile, as, for instance, where liability to pay is denied, or where an account rendered by the bank claiming the money as its own, or where the bank has suspended payment, etc. Morse on Banking, (3d ed.), § 322 (pp. 547, 548); *Franklin Bank,* 19 Am. Dec. 420, note; 2 Enc. Law, p. 101 (1st. ed.); 3 *Ib.* p. 838, (2d ed.); *Root v. Johnson,* 99 Ala. 90; *Odum v. Rutledge,* 94 Ala. 446. This principle is settled as in cases where a tender is ordinarily required as a condition precedent, or a party to whom the tender should be made, declares he will not receive, or makes any declaration or demand is equivalent to a refusal to accept a tender, actual tender is dispensed with.—*Root v. Johnson, supra; Odim v. Rutledge, supra.*

GRAHAM & STEINER and J. M. CHILTON, *contra.*—1. The first counts of the complaint are for money had and received to the use of the plaintiff. The next on an account stated. Next for money loaned. Finally, except the ninth count, on general account. We submit that a bank deposit made by the plaintiff can not be recovered under any of the counts, if not under the ninth. Money had and received is not an appropriate action, where the payment is voluntary and the relation of debtor and creditor exists by contract. Money so deposited can not be said to belong *ex equo et bono* to the plaintiff. Indeed, as has been decided, the title to the money passes by the act of deposit to the bank, and the relation, of debtor and creditor spring into existence. The same is true of the other counts, except the ninth.—3 Encyc. of Pl. & Pr., 255; 2 Encyc. of Pl. & Pr., 1062 *et seq.: State v. Railroad Co.,* 34 Md. 279; *McCuen v. Davis,* 39 Ind. 283.

2. If the count itself was sufficient, the evidence fails to sustain it, because no demand by plaintiff is shown. Plaintiff gave the check to Crum & Weil, and they presented a check payable to themselves. This was not a demand by plaintiff, but by Crum & Weil, the payees of the check. Even if the plaintiff had brought an action on the case for the bank's refusal to

[Tobias v. Josiah Morris & Co.]

pay the check to Crum & Weil, she must have averred what is not averred here, to-wit, that Crum & Weil indorsed it, as it was payable to them. But this is not an action.on the case. It is an action for a deposit, and she must allege and prove a previous demand by her. But the count fails to state a substantial cause of action, and the court below did not err in respect to it. Such a defect is not waived, even after a judgment by default.—*Thomas v. State*, 58 Ala. 265; *Cummings v. Stewart*, 4 Stew. 397; *Emanuel v. Ketchum*, 21 Ala. 357; *Browder v. Gaston*, 30 Ala. 677; *Kyle v. Carvello*, 103 Ala. 150.

3. The objections raised by plaintiff's attorneys to the witness Jones testifying "He told me his reason for opening an account—his wife was present," is not good, because it is a part of the *res gestae*. The conversation about which the witness was testifying was had in the store of the witness with Marion Tobias, the husband of the plaintiff, in her presence, and led up to and is so connected with the main fact under consideration as to illustrate its character.—*Hooper v. Edwards*, 20 Ala. 528; *Wolff v. Perryman*, 93 Ala. 290; *Cleveland Woolen Mills v. Sibert*, 81 Ala. 140; *Bragg v. Massie*, 38 Ala. 89; *Williamson v. Tyson*, 105 Ala. 644.

4. We insist that the plaintiff, being present at the time the deposit was made, it was her duty, if instructions were given by her husband in reference to drawing the money out contrary to her wishes, to have then and there dissented therefrom, and to have given her own instructions. Having failed to do this, she is estopped from denying that the bank improperly paid the money on checks drawn in her name by her husband, M. S. Tobias. Her own conduct in keeping silent when she should have spoken and *not the conduct of the bank* was the cause of the loss of her money, and she must shoulder the burden resulting therefrom.—Morse on Banks & Banking (3d ed.), 721; Bigelow on Estoppel (3d ed.), 492 *et seq; Mich. Pan. Mach. Co. v. Parsell*, 38 Mich. 475; *Day v. Caton*, 119 Mass. 513; 11 Am. & Eng. Encyc. of Law (2d ed.), 427; *Fowler v. Parsons*, 143 Mass. 401; 7 L. R. A. 755, and note under head of "Silent Acquiescence" on p. 756.

5. "A course of dealing between the bank and a single person may establish obligations as to its continuance, and, if nothing is provided to the contrary, will

govern subsequent transactions of the same nature between *them.*"—1 Morse on Banks and Banking (3d ed.), p 27; *Hotchkiss v. Artisans Bank*, 42 Barb. 517.

6. A depositor in a bank can not maintain an action to recover a deposit until a demand for its payment has first been made.—9 Amer. & Eng. Encyc. of Law, 213; 2 Amer. & Eng. Encyc. of Law, 338.

7. Agency cannot be proven by the mere declaration of the agent himself.—*Williamson v. Tyson*, 105 Ala. 644; Mechem on Agency, § 100. "Neither the declaration of a man nor his acts can be given in evidence to prove that he is the agent of another."—*Gibson v. Snow*, 94 Ala. 346; *Wormack v. Bird*, 63 Ala. 500; *Tenn. R. T. Co. v. Kavanaugh*, 93 Ala. 324; *Williamson v. Tyson*, 105 Ala. 644.

TYSON, J.—Quite a number of assignments of error are predicated upon the rulings of the court upon demurrers to pleas and replications. These assignments cannot be considered for the reason there is no judgment to support them.—*Cartlidge v. Sloan*, 124 Ala. 596.

The complaint contains a number of counts. All of them, except the last, are the common money counts. The last count claims, "the sum of nineteen hundred and fifty-three and thirty one-hundredths dollars for money and certain checks or bank drafts, which were collected by defendants, deposited with Josiah Morris & Co., defendant's bank to be credited to the account of plaintiff and with defendants' bank, to-wit: during the months of September, November and December, 1895, which said money was subject to the check or demand of plaintiff. And plaintiff avers that the said defendants have failed anl refused upon demand to pay the same, which sums with interest thereon are still due and unpaid."

The sufficiency of the averments of this count was not tested by demurrer. Construing it in connection with the evidence introduced upon the trial of the cause, it was obviously the intention of the pleader to frame it so as to recover a general deposit claimed to have been made by the plaintiff with the defendants as bankers. Indeed this was the purpose of the suit. The common money counts do not disclose this purpose. It nowhere

appears in them that such was the object sought to be accomplished by them. For aught that appears the relation of ordinary creditor and debtor only existed between the parties. While it is true the relation of creditor and debtor does exist between the depositor and the banker, yet the usages of the banking. business have introduced certain special rules which enter, if not expressly, impliedly into the contract to pay upon demand. And until a formal demand is made no action lies for the recovery of a general deposit.

In *Branch v. Dawson*, 33 Minn. 399, it is said: "By universal understanding on the part of bankers and depositors, there is a condition attached to the undertaking of the bank. It is not its duty, as it is that of an ordinary debtor, to seek the creditor and pay him wherever found; it does not undertake to pay without respect to place—to pay absolutely and immediately. But its engagement is to pay at its banking-house, when payment shall be called for there. Everybody understands that to be what it assumes to do. * * * This being the understanding upon which the deposit is made, it is parcel of the bank's contract to repay, that, as a condition precedent to its duty to repay, the depositor shall call upon it to do so at its banking-house, and there is no default of the bank until such call is made."

In *Downes v. The Phœnix Bank*, 6 Hill 297, 299 Justice BRONSON said: "Judging from the ordinary course of this busniess [between bank and depositor], I think the understanding between the parties is, that the money shall remain with the banker until the customer, by his check, or in some other way, calls for its repayment; and if such be the nature of the contract, the banker is not in default, and no action will lie, until payment has been demanded. No one could desire to receive money on deposit for an indefinite period. with a right in the depositor to sue the next moment, and without any prior intimation that he wished to recall the loan."

Says Morse, in his work on Banks and Banking, in section 322: "We have already seen that it is a contract specially modified by the clear legal understanding that

the money shall be forthcoming to meet the order of the creditor whenever that order shall be properly presented for payment.    It follows, therefore, that this demand for payment is an integral and essential part of the undertaking, and it may be said, even of the debt itself. In short, the agreement of the bank with the depositor, as distinct and valid as if written and executed under the seal of each of the parties, *is only to pay upon demand.* * * * The undertaking of the bank is not to pay immediately and absolutely, but when payment shall be required.    It is in no default till payment is demanded. Therefore, no right of action exists until demand is made as stipulated for in the implied contract of deposit."

In *Watson v. Phœnix Bank,* 8 Metc. (Mass.) 217, the court said:    "When money is deposited in a bank, to be drawn at the pleasure of the depositor, the bank it not liable to an action without a previous demand.    The request is parcel of the contract, and must be proved. The bank agrees to pay to the order of the depositor; but if it were liable to a suit without previous demand, it would be under the necessity of refusing all deposits, or of making special contracts in every case.    The duties of the parties are reciprocal; the one to pay on demand, the other to make such demand before a right of action accrues."

In Freeman's notes on page 420 of 19 Am. Dec. it is said:    "Since a general deposit is a loan which the banker is obliged to pay when called upon by the draft of the customer, it is clear that there can be no default until the payment has been demanded and refused." A number of authorities are cited in this note to support the proposition.

Indeed, it is the universal doctrine that a depositor cannot maintain an action for his deposit without a previous demand by check or otherwise for its repayment.—Boone on the Law of Banking, § 57 and authorities cited in notes; Bolles on Banks, § 315 and note 1; 2 Am. & Eng. Encyc. Law, 101 and note 1.    The bringing of the suit does not amount to a demand in such cases. 1 Morse on Banks and Banking, § 289 (e) ; *Downes v. Phœnix Bank,* 6 Hill 297; *Chemical Nat. Bank v. Bailey,* 12 Blatchf. 480; *Payne v. Gardiner,* 29 N. Y. 146,

As we have already said, the purpose of the suit was to recover a general deposit of the defendants as bankers. The common money counts do not aver that any demand was made or an excuse for the plaintiff's failure to make it. They were not subject to demurrer on this account for the reason, as we have already stated, that it does not appear upon their face that a general deposit was sought to be recovered under them, or that the relation of depositor and banker existed between the plaintiff and defendant out of which the cause of action arose. A demand being a condition precedent to the maintenance of the suit, no recovery can be had upon these counts in their present form. It is true the evidence tends to show a demand was made, but it is as essential to a recovery that the complaint should aver it as it is that the evidence should establish it. "When by the express or implied terms of the contract it was incumbent on the plaintiff, before the commencement of his action to request the defendant to perform his contract, such request being as it were a condition precedent must be averred;   *   *   *   or there must be some allegation to dispense with it."—Chitty on Pl. *p. 340. See also 3 Encyc. Pl. & Pr. pp 251-256.

Appellees insist that the special count (numbered 9) does not contain a cause of action, and therefore, no recovery could be had upon it. In this we cannot concur. Some of the reasons assigned in support of this insistence might have been made the basis of a demurrer, pointing out the defects in the sufficiency of the averments, but amendable defects cannot be made the ground for holding that a count contains no substantial cause of action.

It is only necessary, in considering the other questions in the case, to deal with the two items of deposit —one for $800 deposited September 15 and the other for $678.30 deposited December 30—as the plaintiff in her testimony disclaims any interest or claim to the other items deposited by her husband and credited by the defendants to her account. The fact is undisputed that these two items were money which belonged to the plaintiff arising from the proceeds of two drafts collected by the defendants and placed to the credit of B.

[Tobias v. Josiah Morris & Co.]

Tobias by M. S. Tobias upon the books of the defendants and were paid out by the defendants upon drafts drawn by B. Tobias by M. S. Tobias. That M. S. Tobias was at the time the deposits were made the husband of B. Tobias, the plaintiff. It is also without dispute that when the account with the defendants was opened, that both the plaintiff and her husband were strangers to the defendants. That she and her husband went to the defendants' place of business in company with W. B. Jones for the purpose of opening the account. That either Jones or the husband presented to the receiving teller of the bank a draft on New York payable to the order of B. Tobias. As to which of them presented the draft to the teller, and as to whether the draft was endorsed by plaintiff in the bank or before going there, there is conflict in the testimony. So, too, there is a conflict in the testimony as to what occurred pending the negotiations for the deposit. The plaintiff testified that Jones handed the draft to the teller requesting him to deposit it to her credit. That the teller took the check and after examining it replied he would do so, but that she would have to endorse it. That he handed it back to Jones, who in turn handed it to her and after endorsing it she returned it to Jones who handed it back to the teller. Her testimony tends to show that nothing else took place in the bank at that time.

The testimony of the other witnesses who were present during this transaction and examined by the defendants contradicts the plaintiff's statement, on nearly every material point. Their testimony tends to show that the deposit was made by M. S. Tobias in the name of his wife, the plaintiff. That it was stated to the teller at the time that the deposits were to be drawn out upon checks to be signed by M. S. Tobias. That the teller then took the signature to be attached to the checks to be drawn on this account in a book kept by the bank for that purpose, which signature was written by M. S. Tobias. This signature as written on the record to be affixed to the checks was "B. Tobias." Plaintiff denies that she heard any of the conversation relative to the drawing out the money, or that she saw her husband give the signature to the teller. In fact she practically denies that any of these things happened.

[Tobias v. Josiah Morris & Co.]

The main contention on the part of the defendants is that the plaintiff is estopped to claim the money on account of her acts and conduct upon the occasion of the deposit. This, of course, depends in a measure upon whether the jury are reasonably satisfied from the evidence that the teller was instructed to honor drafts drawn by her husband; or the signature was given at the time the deposit was made which was to be affixed to drafts to be drawn, and whether the defendants relied upon this in paying out the money.

There can be no doubt, nor can an inference to the contrary be drawn, if this occurrence took place at that time, that the plaintiff was present. If present and although she may not have heard what was said and did not see the signature given, yet if by her acts and conduct on the occasion she led the bank to believe that she had entrusted the entire matter to Jones and her husband or to her husband to make the contract of deposit and how the account was to be kept and how drawn out, and it acted upon it, she must suffer for her own neglect, rather than the bank.

"If a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts, and that it was a true representation, and that the latter was intended to act upon it in a particular way, and he with such relief does act in that way to his damage, the first is estopped from denying that the facts were as represented."—*Carr v. London & North Western Railway Co.* L. R. 10 C. P. 317.

"A party, who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving."—*Gregg v. Wells,* 10 Adol. & E. 90.

"If any person, by actual expressions or by a course of conduct, so conducts himself that another may reasonably infer the existence of an agreement or license, and acts upon such inference, whether the former intends that he should do so or not, the party using that language, or *who has so conducted himself,* cannot af-

[Tobias v. Josiah Morris & Co.]

terwards gainsay the reasonable inference to be drawn from his words or conduct."—*Cornish v. Abington*, 4 H. & N. 549. See also *Swan v. The North British A. Co.*, 7 H. & N. 601.

Negligent silence may work an estoppel as effectually as an express representation.—Bigelow on Estoppel, 588; 7 L. R. A. 755, and note under "Silent Acquiescence" on p. 756.

So too acts or conduct, though nothing is said, if they are calculated to mislead, and do in fact mislead, will work an estoppel, notwithstanding there was no intention to do so.—2 Pom. Eq. §§ 805-809.

The foregoing principles apply to the second deposit claimed by plaintiff as well as to the first, in the absence of evidence of a notification by her to the bank that it should be treated differently from the first in respect to drawing it out. "A course of dealing between the bank and a single person may establish obligations as to its continuance, and, if nothing is provided to the contrary, will govern subsequent transactions, of the same nature, between them."—1 Morse on Banking, § 9. If her conduct on the occasion of the making the first deposit was such as to estop her, it is the equivalent to an assent by her to the agreement made with the bank as to how and by whom the deposits were to be withdrawn; and the bank had the right to presume that this agreement was to be enforced in the manner of drawing the checks upon the account, until some other and different agreement was made.

Twenty-three charges were requested by the plaintiff. They are not insisted upon in argument in detail. We must also decline to so consider them. The leading contention or insistence is that the court erred in giving the general affirmative charge in favor of the defendants. This point is well taken. The main question in the case is whether the plaintiff by her conduct on the occasion of the first deposit estopped herself to now claim these two deposits, which the bank has paid out upon drafts signed in her name by her husband. Under the evidence this is one of fact to be determined by the jury under the principles of law above announced.

Reversed and remanded.